UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


MICHAEL JOHN SOPCZAK (#295605)

VERSUS                                    CIVIL ACTION

LYNN COOPER, ET AL                        NUMBER 12-95-SDD-SCR


## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, March 20, 2014.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MICHAEL JOHN SOPCZAK (#295605)

VERSUS                                          CIVIL ACTION

LYNN COOPER, ET AL                              NUMBER 12-95-SDD-SCR

**MAGISTRATE JUDGE'S REPORT**

Before the court on the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Michael John Sopczak.

For the reasons which follow, the petition should be denied.

## I. State Procedural History

A clear understanding of the overall state court procedural history is needed for a proper analysis of the plaintiff's various claims. The specific procedural history relevant to each claim will be repeated as needed in part III of this report, the Analysis section.

### A. Pre-trial

On September 5, 2004, the petitioner was charged with one count simple burglary in violation of LSA-R.S. 14:62 in the Twenty-first Judicial District Court for the Parish of Livingston, Louisiana.[1]    On October 14, 2004, the petitioner appeared for

---

[1] State Court Record, Vol. 1, p. 30.

arraignment with retained counsel A. Wayne Stewart, at which time he entered a plea of not guilty.[2]

On December 8, 2004, the petitioner appeared for a pretrial conference, represented by Stewart. The case was scheduled for trial on January 31, 2005.[3] On January 31, 2005, the petitioner was present in court, again accompanied by counsel Stewart. On motion of the defense, the trial was continued to March 28, 2005.[4]

On March 28, 2005, the trial was continued to June 20, 2005.[5] On that date the trial was continued again, to October 11, 2005.[6] A pretrial conference was scheduled for August 11, 2005.[7]

Stewart continued to represent the petitioner until July 27, 2005, when his Motion to Withdraw as Counsel of Record was granted.[8] By this time the case had been reassigned to Judge Elizabeth P. Wolfe.

On August 11, 2005, the petitioner appeared in proper person at the pretrial conference before Judge Wolfe.[9] Petitioner advised

---

[2] *Id.* at 1.

[3] *Id.* at 3.

[4] *Id.* at 4.

[5] *Id.* at 5.

[6] *Id.* at 6.

[7] *Id.*

[8] *Id.* at 84.

[9] State Court Record, Vol. 2, pp. 465-471.

Judge Wolfe that he had not hired another attorney, and when asked whether he planned to do so he stated, "I am going to waive counsel at this point."[10]  Judge Wolfe advised the petitioner of his right to counsel and offered to appoint the Public Defender if he could not afford an attorney.[11]  Petitioner requested standby counsel to assist him at trial.[12]  Judge Wolfe advised the petitioner that she would appoint the Public Defender as standby counsel and that the October 11, 2005 trial date was maintained.[13]

On August 24, 2005, the Public Defender filed a Motion for Speedy Trial, a Motion for Bill of Particulars, a Motion for Preliminary Examination and a Motion to Produce and for Discovery.[14]

On September 7, 2005, the petitioner filed a Motion For Supplemental Discovery and to Produce Evidence Favorable to the Accused.[15]  On September 16, 2005, the petitioner filed a pleading, captioned In Re: Pre-Trial Motions, in which he reasserted his intent to represent himself and requested a date to present pretrial motions.[16]  On that same date, the petitioner filed an

---

[10] *Id*. at 468.

[11] *Id*.

[12] *Id*. at 468-469.

[13] *Id*. at 469.

[14] State Court Record, Vol. 1, pp. 85-90.

[15] *Id*. at 94.

[16] *Id*. at 98.

Addendum to Supplemental Discovery and to Produce Evidence Favorable to the Accused.[17]

On October 4, 2005, the petitioner filed a Motion for Continuance which Judge Wolfe denied on October 6, 2005.[18]

On October 11, 2005, the petitioner appeared for trial in proper person before Judge Wolfe.[19] On motion of the State, the trial was continued to March 13, 2006.[20] On March 13, 2006, the petitioner again appeared for trial in proper person before Judge Wolfe.[21] The trial was set to begin on March 14, 2006.[22] On March 14, 2006, the petitioner failed to appear for trial.[23] Judge Wolfe ordered an attachment for the petitioner and set bond at $50,000.[24] On March 16, 2006, on the petitioner's motion, Judge Wolfe

---

[17] *Id*. at 101.

[18] *Id*. at 155.

[19] *Id*. at 9.

[20] *Id*.

[21] *Id*. at 10.

[22] *Id*.

[23] *Id*. at 11.  Petitioner asserted that he "called/advised the court he would be late," and when he appeared late he was arrested. Record document number 39, Amended Pleading (Reply/Traverse) to the State's Answer, p. 1; State Court Record, Vol. 3, pp. 514-515. Whether the petitioner failed to appear or appeared late is not material to the resolution of his claims.

[24] State Court Record, Vol. 1, p. 10.

continued the trial to May 8, 2006.[25]

On May 8, 2006, the petitioner again failed to appear for trial.[26]  Judge Wolfe again ordered an attachment for the petitioner, but this time ordered that he be held without bond.[27]

A pre-trial conference was held before Judge Wolfe on June 19, 2006.[28]  Petitioner appeared in proper person; the attorney he wanted to hire, Dean Lucius, was not present.[29]  At the pretrial conference, Judge Wolfe discussed the Motion to Enroll as Counsel of Record filed by Lucius.  The judge stated that on June 16, 2006, she received a telephone call from Lucius advising her that he had been contacted by the defendant's mother to represent the defendant

---

[25] *Id.* at 170.  Petitioner asserted he was not given notice of this trial date; rather, he asserted he was given a notice to appear on May 24, 2006.  Record document number 39, p. 1; State Court Record, Vol. 3, pp. 514-515.  Whether the petitioner was given notice of the May 8 trial date or a notice to appear on May 24 is not material to the resolution of his claims.

[26] State Court Record, Vol. 1, p. 12.

[27] *Id.*

[28] State Court Record, Vol. 3, pp. 511-516, Transcript of Pretrial Conference held on June 19, 2006.

[29] *Id.*  Petitioner asserted that another attorney affiliated with Lucius was present and presented argument on the motion on June 19, 2006.  Record document number 39, p. 1.  However, the June 19 transcript does not indicate the presence of or argument on the motion from such person.  However, Judge Wolfe did speak with attorney Greg Gueirn on June 19 during a break in court proceedings, but he did not present her with any motion and did not present himself to her as the petitioner's attorney.  State Court Record, Vo. 4, pp. 890-891.

at trial.[30]   Judge Wolfe told Lucius, "That's fine.   But you're going to trial on Monday."[31]   Lucius informed the judge that he would be out of town and would require a continuance, to which Judge Wolfe responded, "No."[32]   The judge reviewed the procedural history of the case and noted that the petitioner had represented himself since August 2005 and had not previously sought to enroll counsel.[33]   Judge Wolfe informed the petitioner that the trial would proceed on June 20, 2006.[34]   In response, the petitioner stated, "I don't want to plead guilty and I don't want to go to trial without my counsel that I obtained."[35]

The jury trial before Judge Wolfe began on June 20, 2006.[36] Petitioner appeared, but Lucius did not appear to represent the petitioner.   Public Defender Nicky Muscarello appeared as appointed standby counsel.

Lucius' Motion to Enroll as Counsel of Record was filed on June 19, 2006 at 1:03 p.m. and was denied on June 20, 2006.[37]

---

[30] State Court Record, Vol. 3, p. 513.

[31] *Id.*

[32] *Id.*

[33] *Id.* at 513-514.

[34] *Id.* at 514.

[35] *Id.* at 515.

[36] *Id.* at 526.

[37] State Court Record, Vol. 1, p. 212.

Petitioner represented himself and participated in the selection of the first juror panel.[38] Petitioner then advised Judge Wolfe that he was mentally unable to proceed.[39]  The judge directed stand-by counsel Muscarello to select the second panel.[40] Muscarello agreed to proceed, but advised Judge Wolfe that he had no knowledge of the case.[41]   Muscarello made an opening statement and conducted the cross-examination of the State's witnesses.[42]

The trial concluded on June 21, 2006. Petitioner was found guilty of simple burglary.  Petitioner was sentenced to 12 years imprisonment at hard labor in the custody of the Louisiana Department of Corrections.

**B. Post-trial**

On direct appeal the petitioner asserted 10 assignments of error:

1.   the trial court erred in proceeding with the trial after failing to provide the defendant with written notice of the trial date;

2.   the trial court erred in denying the defendant's motion to continue;

3.   the trial court erred in denying the defendant's motion to enroll counsel;

---

[38] State Court Record, Vol. 3, pp. 531-625.

[39] *Id*. at 625.

[40] *Id*.

[41] *Id*. at 628.

[42] State Court Record, Vol. 4.

4.  the trial court erred in presenting the defendant with the option of either proceeding to trial without retained counsel or pleading guilty;

5.  the trial court erred in granting the State's oral motion to exclude evidence of a medical condition pursuant to La.C.Crim.P. arts. 725-726;

6.  the trial court erred in failing to conduct a *Prieur* hearing;

7.  the trial court erred when it *sua sponte* compelled the defendant's witness to testify in camera;

8.  the trial court erred when it failed to allow the jury to hear the testimony of Elizabeth Amberg;

9.  the trial court erred in failing to ensure the defendant was afforded effective assistance of counsel;

10. the State failed to meet its burden of proof as to the charge of simple burglary.

The Louisiana First Circuit Court of Appeal affirmed the petitioner's conviction and sentence. *State of Louisiana v. Michael J. Sopczak*, 2007-1090 (La. App. 1st Cir. 6/6/08), 986 So.2d 254.

Petitioner sought supervisory review by the Louisiana Supreme Court. The Louisiana Supreme Court denied review. *State of Louisiana v. Michael J. Sopczak*, 2008-2383 (La. 10/2/09), 18 So. 3d 103.

On October 16, 2008, the petitioner was adjudicated a fourth felony habitual offender and was re-sentenced to a 20 year term of imprisonment without the benefit of parole, probation or suspension of sentence.

8

Petitioner appealed, challenging the validity of the habitual offender adjudication and sentence. Petitioner asserted the following pro se assignments of error:

1.   the trial court erred when it failed to inform the defendant regarding the dangers and disadvantages of self-representation and the appointment of standby counsel did not cure a defective waiver;

2.   the 20 year habitual offender sentence is unconstitutionally excessive;

3.   defendant was not duly cautioned as to any rights, including his right to remain silent, prior to making stipulations to the State's evidence;

4.   the trial court erred in allowing the State to use multiple convictions obtained on the same day as predicate convictions to establish the defendant's multiple offender status; and,

5.   the State failed to carry its burden of proof at the multiple offender adjudication.

On July 27, 2009, counsel filed a Supplemental Brief on Behalf of Appellant Michael J. Sopczak asserting four assignments of error:

1.   the trial court erred in not properly determining that the defendant's waiver of counsel was knowing and intelligently made;

2.   the trial court erred in not adhering to the strict procedures set forth in Louisiana Revised Statute 15:529.1(D)(1)(a);

3.   the trial court erred in not properly advising the defendant of his rights prior to his stipulations relative to the habitual offender petition presented by the State of Louisiana; and,

4.   the trial court erred in allowing the State of Louisiana to sever the defendant's February 15, 1995 convictions in order to establish that he was a fourth felony offender.

9

The Louisiana First Circuit Court of Appeal affirmed the petitioner's habitual offender adjudication and sentence. *State of Louisiana v. Michael J. Sopczak*, 2009-400 (La. App. 1st Cir. 12/23/09), 25 So.3d 250.

Petitioner sought supervisory review by the Louisiana Supreme Court. The Louisiana Supreme Court denied review. *State ex rel. Michael J. Sopczak v. State of Louisiana,* 2010-0684 (La. 4/1/11), 60 So. 3d 1242.

Petitioner signed an application for post-conviction relief ("PCRA") on September 14, 2009 and it was filed on September 16, 2009.

Petitioner asserted three grounds for relief:

1.   it was contrary to the United States Constitution and the Louisiana Constitution to proceed to trial without an unequivocal, determinative waiver of counsel and by failing to warn the defendant about the perils of self-representation; and, another attorney was hired but not allowed to enroll because the attorney needed a continuance;

2.   the prosecutor withheld favorable evidence, elicited false evidence at trial and failed to disclose the names of law enforcement officials who met with the victims on September 27, 2004; and

3.   the trial was allowed to proceed even though the defendant was mentally and physically unable to defend himself, which was a violation of the United States Constitution and the Louisiana Constitution.

The trial court denied the petitioner's PCRA on October 8, 2009.

Petitioner sought review in the Louisiana First Circuit Court

10

of Appeals, which denied review. *State ex rel. Michael John Sopczak*, 2010-0149 (La. App. 1st Cir.). Petitioner sought review in the Louisiana Supreme Court, which also denied review. *State ex rel. Michael John Sopczak*, 2010-1181 (La. 5/20/11), 63 So.3d 974.

## II. Federal Court Procedural History

Petitioner filed a federal habeas petition on February 16, 2012.[43] In response to an order to correct deficiencies in the pleadings, the petitioner signed an amended habeas corpus petition on February 28, 2012 and it was filed on March 7, 2012.[44] Following a video status conference, the petitioner filed an Amended Pleading, which is the operative petition.[45]

Petitioner asserted the following claims for relief:

Claim One:   His Sixth Amendment right to counsel was violated when:

    a.   his waiver of his right to counsel was not knowing and voluntary;

    b.   his motion to enroll counsel was denied; and,

    c.   he was denied effective assistance of counsel at trial, sentencing, and throughout critical stages of the proceedings.

Claim Two:   He received inadequate notice of the trial date, in violation of his due process rights.

---

[43] Record document number 1.

[44] Record document number 3.

[45] Record document number 15.

Claim Three:    He was forced to proceed to trial without the assistance of counsel even though he was physically and mentally unable to represent himself, in violation of his Fourteenth Amendment rights; and,

Claim Four:    The prosecutor engaged in misconduct when she introduced false testimony and withheld evidence, in violation of the petitioner's due process rights.

No evidentiary hearing is required.   Petitioner's habeas corpus application is timely.

### III. Applicable Law and Analysis

**A. Standard of Review**

Section 2254(d) provides  as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(e)(1) provides as follows:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Subsection (d)(2) of § 2254 applies to a state court's factual

determination.  It bars federal court relief unless the state court adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence."  Subsection (d)(1) provides the standard of review for questions of law and mixed questions of law and fact. *Drinkard v. Johnson*, 97 F.3d 751, 767-68 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107, 117 S.Ct. 1114 (1997).

The first clause of subsection (d)(1) refers to questions of law.  When the issue raised involves a purely legal question, the court may grant relief only if it determines that a state court's decision rested on a legal determination that was "contrary to...clearly established Federal law, as determined by the Supreme Court." *Id*.  The second clause of subsection (d)(1) refers to mixed questions of law and fact because it speaks of an "unreasonable application of ... clearly established Federal law." When the issue before the court is a mixed question of law and fact, the court may grant relief only if it determines that the state court decision rested on "an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court," to the facts of the case.

Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, ____ U.S. ____, ____, 131 S.Ct. 1388, 1399, 179 L.Ed.2d 557 (2011); *McCamey v. Epps*, 658 F.3d 491, 497 (5th

Cir. 2011).  Review under § 2254(d)(1) focuses on what a state court knew and did.  *Cullen v. Pinholster*, 131 S.Ct. at 1399. "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review.  If a claim has been adjudicated on the merits by a state court, a federal habeas corpus petitioner must overcome the limitation of § 2254(d)(1) based on the record that was before that state court." *Id.*, at 1400.  State court decisions are measured against the Supreme Court's precedents as of "the time the state court renders its decisions." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S.Ct. 1166 (2003).  *Pinholster* prohibits a federal court from using evidence that is introduced for the first time at a federal-court evidentiary hearing as the basis for concluding that a state court's adjudication is not entitled to deference under § 2254(d).  *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011).[46]

To determine whether a particular decision is "contrary to" then-established law, a federal court must consider whether the decision "applies a rule that contradicts [such] law" and how the decision "confronts [the] set of facts" that were before the state court. *Williams v. Taylor*, 529 U.S. 362, 405, 406, 120 S.Ct. 1495,

---

[46] The Fifth Circuit Court of Appeals has held that a federal court may properly hold an evidentiary hearing when it determines, based solely on the state court record, that the state court's determination was contrary to or involved an unreasonable application of clearly established federal law. *Bobby Smith v. Burl Cain*, 708 F.3d 628, 634 (5th Cir. 2013).

1519 (2000). If the state court decision "identifies the correct governing legal principle" in existence at the time, a federal court must assess whether the decision "unreasonably applies that principle to the facts of the prisoner's case." *Id*., at 413, 120 S.Ct. at 1523.

## B. Claim One: Sixth Amendment Violations

In Claim One, the petitioner argued that: (a) his waiver of trial counsel was not knowing and voluntary; (b) he was denied assistance of counsel when the trial court denied his motion to enroll counsel prior to trial; and, (c) he was denied effective assistance of counsel at critical stages of the proceedings in violation of his Sixth Amendment rights.

The Respondent argued that the petitioner did not exhaust his Sixth Amendment claims. Specifically, the Respondent argued that the petitioner did not fairly present his waiver-of-trial-counsel claim on direct appeal or in his PCRA because the petitioner did not assert on direct appeal or during post-conviction proceedings that the trial court's determination of his waiver of trial counsel violated *federal* law.

### 1. Exhaustion

Congress provided that the writ of habeas corpus shall not be granted unless the petitioner has exhausted all remedies available in the court of the state that exercised custody over the

petitioner.   28 U.S.C. § 2254(b).   Generally, the exhaustion requirement is satisfied if a claim has been presented once to the state's highest court. *Carter v. Estelle*, 677 F.2d 427, 442 n. 10 (5th Cir.), *modified on other grounds*, 691 F.2d 777 (5th Cir. 1982), *cert. denied*, 460 U.S. 1056, 103 S.Ct. 1508 (1983); see generally *Richardson v. Procunier*, 762 F.2d 429, 430-32 (5th Cir. 1985).

To demonstrate compliance with the exhaustion requirement, a habeas applicant must show that the federal claim he asserts in federal court has been "fairly presented" to the state courts. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512 (1971). The exhaustion requirement is satisfied (1) when the substance of the federal claim is "fairly presented" to the highest state court on direct appeal or in state post-conviction proceedings, "even if the state court fails to address the federal claim," *Soffar v. Dretke*, 368 F.3d 441, 467 (5th Cir. 2004), or, (2) if the federal claim is not fairly presented but the state court addresses it *sua sponte*, *Jones v. Dretke*, 375 F.3d 353, 355 (5th Cir. 2004).

A claim is fairly presented when the petitioner "asserts the claim in terms so particular as to call to mind a specific right protected by the Constitution or alleges a pattern of facts that is well within the mainstream of constitutional litigation." *Kittelson v. Dretke*, 426 F.3d 306, 315 (5th Cir. 2005) (per curium) (internal quotation marks omitted). "It is not enough that all the

facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982)); *see also Duncan v. Henry*, 513 U.S. 364, 366 (1995) (per curium) (holding that petitioner did not fairly present federal due process claim by bringing a "somewhat similar" but doctrinally distinct "miscarriage of justice" claim under the California Constitution); *Gartrell v. Lynaugh*, 833 F.2d 527, 529 (5th Cir. 1987) (holding that petition presenting state-law sufficiency challenge fairly presented a federal sufficiency challenge because "the federal and state standards applicable to [petitioner's] claims are identical, not merely 'somewhat similar'"). "Rather, the petitioner must afford the state court a 'fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir. 2004) (quoting *Anderson*, 459 U.S. at 6).

First, on appeal the petitioner argued that the trial court erred in denying his motion to enroll counsel in violation of Sixth Amendment rights and he was denied effective assistance of counsel in violation of his Sixth Amendment rights.[47]

Second, on appeal following his habitual offender adjudication

---

[47] State Court Record, Ancillary Vol., Original Appellant Brief, Claims, II., III., IV., and IX., *State of Louisiana v. Michael J. Sopczak*, 2007-1090 (La. App. 1st Cir. 6/6/08).

the petitioner argued that his waiver of counsel was not knowingly and intelligently made and the appointment of standby counsel did not cure the defective waiver.[48]   Petitioner noted that  prior to trial, he retained counsel but the court denied the motion to enroll and he was forced to proceed in proper person.[49]

Third, in Claim I of the PRCA, the petitioner specifically asserted, "It was contrary to both Fed. and La. State Constitutions to proceed to trial without a (sic) unequivocal, determinative waiver of counsel and by failing to warn about the perils of self-representation."[50]  In the Supporting Facts section of Claim I, the petitioner stated the following:

> At the 10-6-05 hearing applicant was told "until the I.D.B. was requested or "another Attorney" the arrangement would be standby counsel for Procedure only, another atty. was hired but not allowed to enroll because he needed a continuance.

Claim I of the PCRA can be fairly read to include two components: (1) that the petitioner was not allowed to withdraw his waiver of counsel and have counsel enroll to represent him; and, (2) the petitioner's initial waiver of counsel was not knowing and voluntary because the court failed to make him aware of the dangers

---

[48] *Id.*, On Direct Appeal From the October 16, 2008 Multi-Bill Adjudication brief, pp. 9-14, *State of Louisiana v. Michael J. Sopczak*, 2009-400 (La. App. 1st Cir. 12/23/09).

[49] *Id.* at 11-12.

[50] State Court Record, Vol. 2, p. 396, Uniform Application For Post-Conviction Relief.

and disadvantages of self-representation.   Petitioner raised the same claims in writ applications to the Louisiana First Circuit Court of Appeal[51] and the Louisiana Supreme Court.[52]   These claims correspond to the three components of Claim One of the petitioner's federal habeas corpus petition.

Petitioner's Claim One - that his waiver of trial counsel was not knowing and voluntary, he was denied the assistance of counsel at trial, and he was denied effective assistance of counsel at critical stages of the proceedings, all in violation of his Sixth Amendment rights - was fairly presented to the state courts and was thereby exhausted.

## 2. Knowing and Voluntary Waiver of Counsel

In the first component of Claim One the petitioner argued that his waiver of counsel was not knowing and voluntary.

A defendant has a Sixth Amendment right to self-representation when he voluntarily and intelligently elects to do so.   *Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 2527 (1975).   A defendant must understand that he is not just relinquishing the

---

[51]   Record document number 1-2, pp. 1-15, Defendant's Application for Supervisory Writs to the First Circuit Court of Appeal, *State ex rel. Michael John Sopczak*, 2010-0149 (La. App. 1st Cir.).

[52]   Record document number 1-2, pp. 16-59, Relator-Defendant's Application for Writ of Review (Certiorari) to the Louisiana Supreme Court, *State ex rel. Michael John Sopczak*, 2010-1181 (La. 5/20/11).

right to counsel but also the specific benefits associated with representation by counsel. *Id*. at 835, 95 S.Ct. at 2541. "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." *Id.*

To ensure that the defendant's choice of self-representation is voluntary and intelligent, the Court noted that "[a]lthough a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id*. (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236 (1942)). The court must consider the defendant's age and education, and other background, experience, and conduct. The court must ensure that the waiver is not the result of coercion or mistreatment of the defendant, and must be satisfied that the accused understands the nature of the charges, the consequences of the proceedings, and the practical meaning of the right he is waiving. *United States v. Martin*, 790 F2d 1215, 1218 (5th Cir. 1986) (internal citations omitted).

The "assistance of standby counsel, no matter how useful to

the court or the defendant, cannot qualify as the assistance of counsel required by the Sixth Amendment." *United States v. Taylor*, 933 F.2d 307, 312 (5th Cir. 1991).  As a result, the presence of standby counsel is not an effective substitute for the required *Faretta* inquiry.  *United States v. Balogun*, 228 F.3d 408 (5th Cir. 2000).

To determine if the criminal defendant has effectively waived the right to counsel, a district court must consider the totality of circumstances.  *United States v. Virgil*, 444 F.3d 447, 453 (5th Cir. 2006) (citing *United States v. Davis*, 269 F.3d 514, 518 (5th Cir. 2001)).  The Supreme Court "[has] not ... prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Iowa v. Tovar*, 541 U.S. 77, 88, 124 S.Ct. 1379, 1387 (2004).  "There is no sacrosanct litany for warning defendants against waiving the right to counsel." *Virgil*, 444 F.3d at 453 (internal quotation omitted) (quoting *United States v. Jones*, 421 F.3d 359, 364 (5th Cir. 2005)). Rather, "[t]he information a defendant must possess in order to make an intelligent election ... will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Iowa v. Tovar*, 541 U.S. at 88, 124 S.Ct. at 1387; *see also Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023 (1938) ("the determination of whether there has

21

been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.")

When raised in a collateral attack, the burden rests on the criminal defendant to prove that his waiver of counsel was ineffective. *Tovar*, 541 U.S. at 92, 124 S.Ct. at 1390.

In support of his claim that his waiver of trial counsel was not knowing and intelligent, the petitioner argued that the court failed to conduct a *Faretta* hearing. Specifically, the petitioner argued that the court did not inquire into "his age, education or other background to evaluate his fitness for the task."[53] Petitioner further argued that the court did not "say anything about the practical effects of waiving the right to counsel or anything about the consequences of proceeding without counsel."[54] In addition, the petitioner argued that the court "did not give any warnings about the dangers and disadvantages of self-representation."[55]

The state court record showed that the petitioner appeared for arraignment represented by retained counsel Wayne Stewart.[56] On

---

[53] Record document number 15, Amended Pleading, p. 20.

[54] *Id*.

[55] *Id*.

[56] State Court Record, Vol. 1, p. 1.

December 8, 2004, the petitioner, represented by Stewart, appeared in court for a pretrial conference, at which time the case was scheduled for trial on January 31, 2005.[57]  On January 31, 2005, the petitioner appeared with Stewart, and on the petitioner's motion the trial was continued until March 28, 2005.[58]

On March 28, 2005, in the presence of the petitioner and counsel Jasper Brock, the court ordered that the trial be continued until June 20, 2005.[59]  On June 20, 2005, the petitioner, represented by Stewart, appeared before Judge Wolfe (to whom the case had been assigned) for trial.[60]  The trial was continued until October 11, 2005 and a pretrial conference was scheduled for August 11, 2005.[61]

On July 22, 2005, Stewart filed a Motion to Withdraw as Counsel of Record on ground that the petitioner's mother was interfering with Stewart's representation by attempting to tell him what to do and how to handle the case, and by espousing a "conspiracy theory" by the District Attorney, the Livingston Parish Sheriff's Office and others related to the case against the

---

[57] *Id.* at 3.

[58] *Id.* at 4.

[59] *Id.* at 5.

[60] *Id.* at 6.

[61] *Id.*

23

petitioner.[62]   The motion was granted on July 27, 2005.[63]

On August 11, 2005, the petitioner appeared, without counsel, before Judge Wolfe for the pretrial conference.[64]   Assistant District Attorney ("ADA") Le'Anne Malnar advised the judge that the state had opposed defense counsel's motion to withdraw because the case had been scheduled for trial at the time the motion was filed.[65]   ADA Malnar asked whether Judge Wolfe intended to continue the trial to allow the petitioner to obtain new counsel since ADA Malnar did not want to proceed to trial before the issue was resolved.[66]

Judge Wolfe then questioned the petitioner about hiring another attorney, at which time the petitioner asserted his right to self-representation, as follows:

> THE COURT:      HAVE YOU HIRED ANOTHER ATTORNEY?
>
> MS. SOPCZAK:   NO, MA'AM.
>
> THE COURT:      DO YOU PLAN ON HIRING ANOTHER ATTORNEY?
>
> MR. SOPCZAK:   I'M GOING TO WAIVE COUNSEL AT THIS POINT.
>
> THE COURT:      I CAN APPOINT COUNSEL FOR YOU IF YOU AREN'T ABLE TO AFFORD ONE.  I'LL BE GLAD TO APPOINT THE PUBLIC DEFENDER FOR YOU. YOU HAVE THE RIGHT TO COUNSEL.

---

[62] *Id*. at 84.

[63] *Id*.

[64] State Court Record, Vol. 2, pp. 465-471.

[65] *Id*. at 467.

[66] *Id*. at 468.

MR. SOPCZAK:    IF POSSIBLE, IF WE HAVE TO GO TO TRIAL, A
                STANDBY COUNSEL.

THE COURT:      AND WHAT I'M GOING TO DO IS APPOINT THE
                PUBLIC DEFENDER AS STANDBY COUNSEL FOR
                YOU, AND SO WE'LL KEEP THE TRIAL DATE OF
                OCTOBER 11TH.  YOU HAVE YOUR NOTICE FOR
                THAT ALREADY, MR. SOPCZAK.[67]

Moreover, immediately following his waiver of counsel, the petitioner filed a series of motions: Motion for Supplemental Discovery to Produce Evidence Favorable to the Accused,[68] In Re: Pre-Trial Motions,[69] Addendum to Supplemental Discovery and to Produce Evidence Favorable to the Accused.[70]  On September 19, 2005, the State filed a Response to Discovery Motions.[71]

On October 4, 2005, the petitioner filed a Motion for Continuance on the grounds that he had been unable to locate two defense witnesses and had not yet had an opportunity to contact three additional unidentified trial witnesses.[72]  On October 6, 2005, the petitioner's motion for a continuance was denied.[73]

On October 6, 2005, a hearing was held before Judge Wolfe on

---

[67] *Id.* at 468-469.

[68] State Court Record, Vol. 1, pp. 94-97.

[69] *Id.* at 98-100.

[70] *Id.* at 101.

[71] *Id.* at 103.

[72] *Id.* at 155.

[73] *Id.* at 156.

the petitioner's pro se motion for discovery.  The following exchange took place between Judge Wolfe, Public Defender Nicholas Muscarello and ADA Malnar:

> MR. MUSCARELLO:     MY OFFICE HAS BEEN APPOINTED TO REPRESENT MR. SOPCZAK.
>
> MS. MALNAR:     THEY HAVE BEEN APPOINTED TO MERELY ASSIST MR. SOPCZAK.   HE IS REPRESENTING HIMSELF IN THIS MATTER.
>
> M. MUSCARELLO:     WELL, I DON'T KNOW.
>
> THE COURT:     YOU'RE STANDBY COUNSEL.  BASICALLY, WHILE HE REPRESENTS HIMSELF PROCES (sic).
>
> MS. MALNAR:     THAT'S WHAT HE WANTED TO DO.

(TENDERS DOCUMENTS).

MR. SOPCZAK:     (PERUSES DOCUMENTS).  WELL, THIS IS KIND OF WHAT I'VE BEEN ASKING FOR. IF I COULD HAVE TIME TO GO THROUGH IT. I HAD A FEW-[74]

At no time during the hearing did the petitioner dispute that he had previously asserted his Sixth Amendment right to self-representation.

In these circumstances, the petitioner failed to carry his burden of proving that his waiver of counsel was ineffective. Although the petitioner argued that his waiver of counsel was ineffective because the Judge Wolfe did not first determine his age, education or other background, and his fitness for the task, no such formula or script is required.  *Landry v. Cain*, 445 Fed.Appx. 817, 823 (5th Cir. 2011).

---

[74] *Id.* at 175-176.

A review of the record showed during the hearing on the Motion to Withdraw as Counsel, the petitioner advised Judge Wolfe that he wanted to represent himself.  Petitioner unequivocally asserted his right to self-representation and the judge granted the request. Judge Wolfe repeatedly advised the petitioner that she would appoint counsel for him, and in response the petitioner requested standby counsel.

Consideration of all of the circumstances, including Judge Wolfe's substantial involvement in the case and the colloquy between her and the petitioner at the motion hearing, supports finding that the petitioner's waiver of counsel was knowing, intelligent and voluntary.

### 3. Revocation of Waiver of Counsel

In the second component of Claim One the petitioner argued that just prior to the trial on June 20, 2006, the attorney the petitioner's mother hired filed a motion to enroll and requested a continuance.  Petitioner argued that because Judge Wolfe denied the motion he was forced to proceed to trial without the assistance of counsel, in violation of his Sixth Amendment rights to counsel. The undersigned understands the petitioner to be arguing that by seeking to enroll retained counsel the petitioner implicitly revoked his prior waiver of counsel.

The Louisiana First Circuit Court of Appeal made the following factual findings:

27

Herein, the defendant pled not guilty on October 14, 2004, in the presence of private counsel, Wayne Stewart. During pretrial proceedings, on August 11, 2005, the defendant waived counsel and asked the trial court to appoint standby counsel. The motion to continue at issue on appeal was filed on June 19, 2006, one day before the trial and notes the filing of a motion to enroll as counsel of record on June 16, 2006. The motion further notes that the defendant's counsel would not be available for trial on the week of June 19, 2006. In the midst of the trial, the trial court noted the filing of the motion to enroll and motion for continuance and its denial of said motions. The trial court further noted that the defendant fired Stewart, the colloquy in the record of the defendant's waiver of counsel, and the trial court's appointment of a public defender as standby counsel.

In the instant case, we find no abuse of discretion in the trial court's denial of the motion to continue, and there is no specific showing that the defendant was prejudiced. Further, we find that the trial court did not err in denying the motion to enroll private counsel. At the time of the filing, it was too late in the proceedings for the defendant to assert his right to hire private counsel. Granting of the motion would have obstructed the orderly procedure of the trial court. The appointed, standby counsel made numerous objections during the State's direct examination of witnesses and thoroughly cross-examined the State's witnesses. The defendant has failed to make a showing of any deficiency or prejudice.

*State of Louisiana v. Michael J. Sopczak*, 2007-1090 at 5-9.

The starting point for cases subject to § 2254(d)(1) is to identify the "clearly established Federal law, as determined by the Supreme Court of the United States" that governs the petitioner's claims. See *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495 (2000); *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S.Ct. 141 (2009).

It is beyond dispute that "[t]he Sixth Amendment safeguards to

an accused who faces incarceration the right to counsel at all critical stages of the criminal process." *Iowa v. Tovar*, 541 U.S. 77, 80-81, 124 S.Ct. 1379, 1383 (2004); see *United States v. Cronic*, 466 U.S. 648, 653-654, 104 S.Ct. 2039, 2043-2044 (1984); *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 796 (1963). It is just as well settled, however, that a defendant also has the right to "proceed *without* counsel when he voluntarily and intelligently elects to do so." *Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 2527 (1975). The "defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation." *Id*. at 835, 95 S.Ct. at 2541 (internal quotation marks omitted).

However, the Supreme Court has never explicitly decided whether a defendant who validly waived his right to counsel has a Sixth Amendment right to reassert it later. *Marshall v. Rodgers*, ____ U.S. ____, ____, 133 S.Ct. 1446, 1449-51 (2013)(per curiam). In *Rodgers*, the Court noted the "tension" between the Sixth Amendments's guarantee of "the right to counsel at all critical stages of the criminal process" and "its concurrent promise of a 'constitutional right to proceed *without* counsel when [a criminal defendant] voluntarily and intelligently elects to do so.'" *Id*. at 1450-51 (alterations in original, internal citations omitted). The Court held that the approach of the California courts — which vest the trial judge with discretion to either grant or deny a post-waiver request for appointment of counsel based on a totality of

29

the circumstances — "cannot be said" to be "contrary to or an unreasonable application of the 'general standard[s]' established by the Court's assistance-of-counsel cases." *Id*. (alteration in original, internal citation omitted).

In this case, the Louisiana First Circuit Court of Appeal's conclusion - that the trial court had discretion to grant or deny a post-waiver request to enroll retained counsel, and that such decision is reviewed based on the totality of the circumstances - is wholly consistent with *Rodgers*.[75]

Petitioner has not shown that the denial of the motion to enroll retained counsel, rested on "an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court," § 2254(d)(1), to the facts of the case. Consequently, the petitioner has not overcome the bar imposed by § 2254(d)(1). Petitioner is not entitled to relief on this aspect of his Sixth Amendment claim.

### 3. Ineffective Assistance of Standby Counsel

In the third component of Claim One the petitioner argued that he was denied effective assistance of counsel at critical stages of the proceedings.

---

[75] It is well-established that a state court's decision adjudicating an issue cannot be contrary to, or an unreasonable application of, Supreme Court precedent if the Supreme Court has not yet decided the issue. *See Wright v. Van Patten*, 552 U.S. 120, 125-26, 128 S.Ct. 743, 746-47 (2008) (per curiam); *Carey v. Musladin*, 549 U.S. 70, 77, 127 S.Ct. 649, 654 (2006).

A State may — even over objection by the accused — appoint a "standby counsel" to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary. *Faretta v. California*, 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 2541 n. 46 (1975).

In *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944 (1984), the Court elaborated on the interplay of the role of standby counsel and a criminal defendant's *Faretta* right of self-representation. The Court noted the *Faretta* right serves two objectives: to preserve a defendant's autonomy and, occasionally, to present the best possible defense. *Id*. at 176-77, 104 S.Ct. at 950. The Court stated that the ends of the *Faretta* right may be served without barring outright the participation of unsolicited standby counsel. *Id*. On the other hand, to give effect to the *Faretta* right, the Court established limits: "the pro *se* defendant is entitled to preserve actual control over the case he chooses to present to the jury," and "participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself." *Id*. at 178, 104 S.Ct. at 951.

Taking into account that hybrid representation is not required, *McKaskle*, 465 U.S. at 183, 104 S.Ct. at 953, the inherent conflict between the *Faretta* right to self-representation and the

31

appointment of standby counsel supports the conclusion that there is no right to standby counsel. *United States v. Oliver*, 630 F.3d 397, 413 (5th Cir. 2011) (holding no right to standby counsel); *United States v. Morrison*, 153 F.3d 34, 55 (2nd Cir. 1998) (same); *United States v. Mikolajczyk*, 137 F.3d 237, 246 (5th Cir. 1998) (same); *United States v. Martin*, 790 F.2d 1215, 1218 (5th Cir. 1986) (same).   Certainly, there is no Supreme Court precedent clearly establishing such a right. *United States. v. Windsor*, 981 F.2d 943, 947 (7th Cir. 1992).

Therefore, the inadequacy of standby counsel's performance, without a valid relinquishment of the defendant's *Faretta* right to self-representation, cannot give rise to an ineffective assistance of counsel claim under the Sixth Amendment. *See Wainwright v. Torna*, 455 U.S. 586, 587-88, 102 S.Ct. 1300, 1302 (1982)(holding no deprivation of effective assistance of counsel was possible where there was no constitutional right to counsel); *Wilson v. Parker*, 515 F.3d 682, 697 (6th Cir. 2008) (to the extent standby counsel failed to act during trial, petitioner "merely suffered the consequences of his decision to proceed *pro se*"); *United States v. Taylor*, 933 F.2d 307, 312 (5th Cir. 1991) (finding that the assistance provided by standby counsel cannot qualify as the assistance of counsel under the Sixth Amendment).

Consequently, the petitioner is not entitled to relief on this aspect of his Sixth Amendment claim.

**D. Claim Two: Insufficient Notice of Trial**

In Claim Two the petitioner argued that he did not receive sufficient notice of the date the case was scheduled for trial, in violation of the Fourteenth Amendment and La. C.Cr.P. art. 702.

A federal habeas court may grant relief when the petitioner is held in custody pursuant to a judgment of a state court only on the ground that he is in custody in violation of the Constitution, laws or treaties of the United States.  28 U.S.C.  § 2254(a). Federal courts will not review a state court's interpretation of its own law in a federal habeas corpus proceeding.  *Cook v. Morrill*, 783 F.2d 593 (5th Cir. 1986).

Insofar as the petitioner's habeas claim rests on the proper interpretation and application of state jurisprudence and procedural rules, this is an issue not within the scope of federal habeas corpus.

Petitioner argued that he was denied his due process rights to a fair trial when he did not receive adequate notice of the trial date and was not given enough time to prepare for trial.

It is basic to due process that an accused person have a fair opportunity to tell his story in a fair trial.  He is entitled to such notice of trial that he will be able to present his witnesses in court on the day of the trial.  *MacKenna v. Ellis*, 280 F.2d 592, 595 (5th Cir. 1960).

Although the petitioner purportedly first learned on June 16, 2006 that the case was scheduled for trial on June 20, 2006, the state court record showed that he was long aware that the case would go to trial.

Petitioner was charged with one count simple burglary on September 5, 2004.[76]  The case was first scheduled for trial on January 31, 2005, but the trial was continued.[77]  After his retained counsel withdrew and the petitioner was proceeding *pro se*, the case was scheduled for trial on October 11, 2005, and the petitioner appeared for trial.[78]  On motion of the State, the trial was continued to March 13, 2006.[79]  On March 13, 2006, the petitioner appeared for trial, presumably prepared to proceed.[80]  The trial was set to begin the next day, March 14, 2006.[81]  On March 14, 2006, the petitioner failed to appear (or appeared late) for trial.[82]  On March 16, 2006, the trial was continued to May 8, 2006.[83]  On May

---

[76] State Court Record, Vol. 1, p. 30.

[77] *Id.* at 3.

[78] *Id.* at 9.

[79] *Id.*

[80] *Id.* at 10.

[81] *Id.*

[82] *Id.* at 11. See note 23.

[83] *Id.* at 170.

8, 2006, the petitioner again failed to appear for trial.[84]  A pre-trial conference was held on June 19, 2006 and the trial began on June 20, 2006.[85]

Petitioner had nearly two years to prepare for trial, much of the additional time resulted from his failure to appear twice for trial.  Petitioner does not dispute that he received notice on June 16, 2006, albeit purportedly through his mother, that the case was scheduled for trial on June 20, 2006, and he participated in a pretrial conference with Judge Wolfe on June 19, 2005.  Petitioner was present for trial on June 20, 2006 and participated in jury selection.  Petitioner filed a request for the issuance of trial subpoenas on June 20, 2006, after the trial had already begun, which Judge Wolfe granted the request the next day.[86]  After the State completed it's case the petitioner's mother was called as a witness and questioned by stand-by counsel.[87]  Petitioner did not testify, and advised Judge Wolfe that no other witnesses would be called.[88]

In these circumstances, the petitioner's due process rights

---

[84] *Id*. at 12. See note 25.

[85] State Court Record, Vol. 3, pp. 511-516, Transcript of Pretrial Conference held on June 19, 2006.

[86] State Court Record, Vol. 1, pp. 222-224.

[87] State Court Record, Vol. 4, pp. 891-898.

[88] *Id*. at 898-899.

were not violated.[89]   Petitioner's Claim Two is without merit.

### E. Claim Three: Physically/Mentally Unable to Proceed

In Claim Three the petitioner argued that he was forced to proceed to trial without the assistance of counsel even though he was physically and mentally unable to represent himself, in violation of his Fourteenth Amendment rights.   Petitioner argued that at the time of trial he had a Staphylococcus aureus infection in both legs and his medication regimen had recently been modified. Petitioner argued that this adversely affected his ability to proceed to trial.

In Claim III of his PCRA the petitioner alleged the following:

The trial of this matter proceeded when the defendant was mentally and physically unable to defend himself against the charge he was accused (the conviction was obtained in violation of both Fed. and State Constitutions).[90]

The trial court made the following factual findings:

Claim three is without merit and denied.  The defendant was physically present at trial and after an informed discussions between the defendant and the Court, it was determined that, while the defendant did not want to proceed with the trial, he was physically and mentally able to do so, after all proper notices and settings had been sent to him.[91]

Petitioner has not carried his burden to rebut the presumption

---

[89] *See, Fulton v. United States*, 198 Fed.Appx. 210, 214 (3d Cir. 2006).

[90] State Court Record, Vol. 2, p. 397, Uniform Application for Post-Conviction Relief, Claim III, p. 6.

[91] *Id*. at 398, handwritten ruling on PCRA, October 8, 2009.

of the correctness of trial court's factual findings by clear and convincing evidence, as he is required to do by § 2254(e)(1).

The record showed that at the June 19, 2006, pretrial conference the petitioner advised the court, "With all the medical problems and stuff I can't contend on my own."[92]  The trial began with the petitioner representing himself, and the first jury panel was selected.  Petitioner then informed Judge Wolfe that he could not proceed: "I'm mentally not even there anymore," and "I'm feeling pretty bad and disoriented."[93]  Thereafter, the petitioner continued to argue that he had not received notice of the trial.[94]  After additional jurors were empaneled, the petitioner argued extensively against the admissibility of other crimes evidence[95] and again regarding a lack of notice.[96]

Petitioner then advised Judge Wolfe that he filed a Motion for Medication by treating Physician.[97]  The judge reviewed the motion and the petitioner confirmed that he sought an order permitting him to have his medication during the proceedings.[98]  The motion was

---

[92] State Court Record, Vol. 3, p. 514.

[93] *Id.* at 625.

[94] *Id.* at 626-628.

[95] *Id.* at 702-703.

[96] *Id.* at 711-712.

[97] *Id.* at 713.

[98] *Id.*

subsequently granted.[99]

At this juncture the petitioner informed the court:

As of this day, as of this point, the rest of this day I can't contend, with my injuries and all that.  I'm very disoriented and I'm having a hard time understanding this.  It was popped on me just three days ago.  That's it.[100]

Thereafter, the petitioner again argued extensively that he had not received notice of the trial.[101]

On the second day of trial, the petitioner presented evidence regarding the notice issue, presented argument and moved for a mistrial.[102]

After the State rested its case, the petitioner argued against the introduction of other crimes evidence, asserted his right to call his mother as a witness and participated in her questioning, once again argued the notice issue, and advised the court that the defense rested.[103]

Consideration of all the record evidence supports the findings of the state trial court that the petitioner was neither physically nor mentally incapable of proceeding at trial.  Petitioner's Claim Three is without merit.

---

[99] State Court Record, Vol. 4, pp. 814-815.

[100] State Court Record, Vol. 3, p. 715.

[101] *Id.* at 716-722.

[102] State Court Record, Vol. 4, pp. 771-780.

[103] *Id.* at 876-900.

**F. Claim Four:** *Giglio/Brady* **Claims**

In Claim Four the petitioner argued that the prosecutor engaged in misconduct when he introduced false testimony and withheld evidence, in violation of his due process rights to a fair trial.

### 1. False Testimony

In the first component of Claim Four the petitioner argued that ADA Malnar introduced the false testimony of Livingston Parish Deputy Sheriff Walter McMorris. Specifically, the petitioner argued that Dt. McMorris provided false testimony when he testified that he drew his weapon to force a butcher knife out of the petitioner's hand. Petitioner argued that this information was not contained in the police and investigative reports, he was not charged with an offense regarding the knife, and Dy. McMorris' testimony was inconsistent with information State witness Louis Monic allegedly provided to the petitioner's mother shortly after the incident. Petitioner argued that it is improbable that Dy. McMorris would have asked a citizen to assist him in apprehending the petitioner, and it is also improbable that he would not have been charged with some crime after he refused to put the weapon down. Therefore, petitioner concluded, Dy. McMorris' testimony must be false.

In addition, the petitioner argued that Jefferson Parish

39

Deputy Sheriff Kurt Zeagler offered false testimony.  Specifically, the petitioner argued that Dy. Zeagler testified that in 1997, he found the double glass doors and an adjacent window on a church had been shattered and the petitioner was inside the church with a screwdriver working on another door.  Petitioner argued that since the police report does not contain this information, Dy. Zeagler's testimony was false.

### a. *Giglio* Standard

To establish a due process violation based on the State's knowing use of false or misleading evidence, the petitioner must show (1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false.  *Giglio v. United States*, 405 U.S. 150, 153-154, 92 S.Ct. 763, 765-766 (1972); *Boyle v. Johnson*, 93 F.3d 180, 186 (5th Cir. 1996).  It is not enough that the testimony is challenged by another witness or is inconsistent with prior statements.  *United States v. Brown*, 634 F.2d 819 (5th Cir. 1981).

### b. No False Testimony

Dy. McMorris testified that at the time of the incident he was a deputy with the Livingston Parish Sheriff's Department.[104]  Dy. McMorris testified that he was dispatched to a burglary in

---

[104] State Court Record, Vol. 4, p. 737.

progress.[105]  Deputy McMorris testified that when he arrived he was met by a couple of people who informed him that the subject was in the building and was being held by Louis Monic.[106]  Dy. McMorris testified that when he entered, the petitioner was sitting on the floor and as he approached he told the petitioner to show his hands.[107]  Dy. McMorris testified that the petitioner would not acknowledge him.[108]

Dy. McMorris testified that he approached the petitioner and as he reached out to grab the petitioner the petitioner reached down into his back pocket, picked up a butcher knife and started to come up with it.[109]  Dy. McMorris testified that he drew his weapon and told the petitioner to put the knife down and the petitioner complied.[110]  Dy. McMorris testified on cross-examination that the butcher knife was either in the petitioner's back pocket or underneath him.[111]

Louis Monic testified that on September 5, 2004, he entered

---

[105]  *Id*. at 738.

[106]  *Id*. at 739.

[107]  *Id*.

[108]  *Id*.

[109]  *Id*. at 739-740; 756-757.

[110]  *Id*. at 740; 757.

[111]  *Id*. at 757.

the Hungarian Association building and saw the petitioner inside.[112] Monic testified that he exited the building, retrieved a gun from his truck and returned to the building.[113]  Monic testified that he hollered at the petitioner and the petitioner attempted to get up.[114]   Monic testified that he told the petitioner, "Do not move."[115]

Monic testified that after Dy. McMorris arrived he helped the deputy to get the petitioner to stand up.[116]  Monic testified that while assisting the petitioner to his feet Dy. McMorris ordered the petitioner to drop the knife and pointed a gun at the petitioner's head.[117]  Monic testified that when he pulled back, he saw the butcher knife,[118] and the petitioner dropped the knife.[119]

There is absolutely no evidence that the testimony of Dy. McMorris was false.

Deputy Kurt Zeagler testified that he is employed by the

---

[112] *Id.* at 833.

[113] *Id.* at 836.

[114] *Id.* at 838.

[115] *Id.*

[116] *Id.* at 839.

[117] *Id.* at 840.

[118] *Id.* at 841.

[119] *Id.*

Jefferson Parish Sheriff's Office.[120]   Dy. Zeagler testified that he arrested the petitioner on two counts of burglary in 1997.   Dy. Zeagler testified that on December 4, 1997, he responded to a burglar alarm at 400 West Esplanade, where an Episcopal church is located.   Officer Zeagler testified that the church had been burglarized but he did not find anyone at the crime scene.[121]   Dy. Zeagler testified that he was notified that a burglar alarm was activated at a second church about four blocks away and he responded.[122]   Dy. Zeagler testified that he found a broken window in the front of the church, entered the building and located the petitioner in the back of the building.[123]   Dy. Zeagler testified that the double glass front doors and a window had been shattered with what looked like a brick.[124]   Dy. Zeagler testified that he found the petitioner inside the church with a screwdriver working on another door.[125]   Dy. Zeagler testified that he took the petitioner into custody and found property in his pockets which had been stolen from the first church.[126]

---

[120] *Id.* at 866.

[121] *Id.* at 867.

[122] *Id.* at 868.

[123] *Id.*

[124] *Id.*

[125] *Id.*

[126] *Id.*

The State introduced, without objection, the minutes concerning Docket Number 976464, Twenty-fourth Judicial District Court, including the petitioner's December 19, 2001 guilty plea to the charge of burglary.[127]

There is absolutely no evidence that the testimony of Dy. Zeagler was false.

Petitioner's *Giglio* claim is without merit.

**(2) Evidence Withheld**

In the second component of Claim Four the petitioner argued that the State withheld evidence.[128]  Specifically, the petitioner asserted that after he was arrested his mother met with representatives of the Hungarian Culture Association to discuss restitution.  The president of the association indicated that restitution would be acceptable.  However, on September 27, 2004, another meeting was held which two public law enforcement officials also attended.  The day after that meeting, the petitioner was charged in a Bill of Information and the petitioner's family was informed that restitution would no longer be accepted.  Petitioner argued that the State failed to disclose the names of the law enforcement officials who attended the second meeting.

---

[127] *Id.* at 869.

[128] Petitioner did not specifically argue that the prosecution was required to disclose the withheld evidence because it was material and exculpatory.  Record document number 15, Amended Pleading, p. 58-59.

44

### a. *Brady* Standard

To show that the state court's proceeding resulted in a "decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," § 2254(d)(1), the petitioner must show that the prosecution's failure to disclose requested impeachment and exculpatory evidence constituted a violation of due process pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963).

To establish a *Brady* violation, the petitioner must prove that (1) the prosecution suppressed evidence, (2) it was favorable to the petitioner, and (3) it was material. *United States v. Brown*, 650 F.3d at 587-88. "There is no difference between exculpatory and impeachment evidence for purposes of *Brady* ... but it must, somehow, create a reasonable probability that the result of the proceeding would be different." *Id*. at 588. "A 'reasonable probability' exists when the government's suppression of evidence 'undermines confidence in the outcome of the trial.' To prove a reasonable probability of a different result, the 'likelihood of a different result must be substantial, not just conceivable.'" *Id*. (citations omitted).

### b. No Exculpatory Evidence Withheld

Petitioner's argument on this aspect of Claim Four is not supported by any facts showing that the identity of the two public officials was exculpatory and material evidence or somehow would have been favorable to him. Petitioner vaguely argued that he

45

needed the names of these persons "to dispense with extreme bias within the case."[129]   Petitioner has not shown that the identity of the public law enforcement officials was exculpatory and material evidence.

Petitioner's withheld evidence claim is without merit.

**<u>RECOMMENDATION</u>**

It is the recommendation of the magistrate judge that the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Michael John Sopczak be denied.

Baton Rouge, Louisiana, March 20, 2014.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[129] Record document number 15, Amended Pleading, p. 59.